United States District Court
Southern District of Texas
**ENTERED**
March 29, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JOHN WOODCOCK | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:18–CV–00192 |
| | § | |
| MARATHON PETROLEUM | § | |
| COMPANY, LP; and BLANCHARD | § | |
| REFINING COMPANY, LLC | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court is Defendants' Motion to Dismiss. *See* Dkt. 18. Defendants' Motion to Dismiss was referred to this Court by United States District Court Judge George C. Hanks, Jr. for report and recommendation. *See* Dkt. 30. After careful consideration of the pleadings and the applicable law, the Court RECOMMENDS that Defendants' Motion to Dismiss be GRANTED.

### FACTUAL ALLEGATIONS[1]

Plaintiff John Woodcock ("Woodcock") worked in various capacities for Marathon Petroleum Company, LP and Blanchard Refining Company, LLC (collectively, "Marathon") at the Texas City plant. As a member of the local union, Woodcock's

---

[1] This section is based on the material facts alleged in the Second Amended Complaint (Dkt. 17). For the purposes of this motion only, the Court accepts these factual allegations as true.

employment at Marathon was governed by a Collective Bargaining Agreement ("CBA"), effective from February 1, 2015, to January 31, 2019.

Generally speaking, Woodcock alleges that, in violation of the CBA, Marathon required him to work around equipment it knew was defective and non-compliant with environmental and health and safety laws, and then wrongfully terminated his employment when he complained.

More specifically, Woodcock contends Marathon required him "to work around pressure holding vessels, pumps, valves, gauges and equipment, which continuously leaked dangerous levels of toxic gasses, including H2S." Dkt. 17 at 2. Although Woodcock repeatedly complained about the defective pumps and equipment and requested that they be replaced, Marathon did not fix the problem. Instead, Marathon "implemented an unfeasible personal protective equipment policy, which knowingly violated [t]he Clean Air Act and other Environmental, Health and Safety civil and criminal laws." *Id.* Moreover, "the policy required [Woodcock] to act as an active co-conspirator in the knowing release of dangerous gasses in violation of the Clean Air Act and Environmental, Health and Safety State and Federal Laws." *Id.* at 2–3. As a direct result of Woodcock's complaints about these actions and his refusal to cooperate in these knowing violations of the law, Marathon terminated Woodcock's employment.

Based on these allegations, Woodcock asserts breach of contract, fraud, and *Sabine Pilot* claims. Marathon has filed a Motion to Dismiss, seeking to dismiss Woodcock's Second Amended Complaint in its entirety.

## RULE 12(B)(6) STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In deciding a Rule 12(b)(6) motion, the court construes Woodcock's factual allegations in the light most favorable to plaintiff, accepts all well-pleaded factual allegations, and draws all reasonable inferences in Woodcock's favor. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint must contain "more than an unadorned, the defendant-unlawfully-harmed-me accusation," but need not have "detailed factual allegations." *Id.* (internal quotation marks and citation omitted). The plaintiff's claims must also be plausible on their face, which means there is "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotation marks and citation omitted). The Fifth Circuit has repeatedly noted that "a motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted." *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (internal quotation marks and citation omitted).

## ANALYSIS

### A.   CONTRACT

Marathon first argues that Woodcock's breach of contract claim must be dismissed

because it is preempted by Section 301 of the Labor Management Relations Act

("LMRA").   Section 301 "provides the requisite jurisdiction and remedies for individual

employees covered under a collective-bargaining agreement between that individual's

employer and the union." *Thomas v. LTV Corp.*, 39 F.3d 611, 616 (5th Cir. 1994) (citation

omitted).   Section 301 states, in pertinent part:

> Suits for violation of contracts between an employer and a labor organization
> representing employees in an industry affecting commerce as defined in this
> chapter, or between any such labor organizations, may be brought in any
> district court of the United States having jurisdiction of the parties, without
> respect to the amount in controversy or without regard to the citizenship of
> the parties.

29 U.S.C. § 185(a).   Addressing Section 301, the Fifth Circuit thoroughly explained:

> Section 301 of the LMRA does not specifically address preemption; rather,
> it provides federal jurisdiction for suits involving CBA disputes.   The
> Supreme Court, however, has held that "§ 301 expresses a federal policy that
> the substantive law to apply in § 301 cases is federal law, which the courts
> must fashion from the policy of our national labor laws," *Allis–Chalmers
> Corp. v. Lueck*, 471 U.S. 202, 209, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)
> (citation and internal quotation marks omitted), and that the "dimensions of
> § 301 require the conclusion that substantive principles of federal labor law
> must be paramount in the areas covered by the statute [so that] issues raised
> in suits of a kind covered by § 301 [are] to be decided according to the
> precepts of federal labor policy." *Id.* (quoting *Teamsters v. Lucas Flour Co.*,
> 369 U.S. 95, 103, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962)). As noted by the *Allis–
> Chalmers* Court, "[a] state rule that purports to define the meaning or scope
> of a term in a contract suit therefore is pre-empted by federal labor law." *Id.*
> at 210.

4

*Espinoza v. Cargill Meat Sols. Corp.*, 622 F.3d 432, 442 (5th Cir. 2010). The preemptive effect of Section 301 applies to causes of action arising out of contract and tort. *See United Steelworkers v. Rawson,* 495 U.S. 362, 368 (1990). "Preemption occurs when a decision on the state claim is inextricably intertwined with consideration of the terms of the labor contract or when the application of state law to a dispute requires interpretation of the collective-bargaining agreement." *Thomas*, 39 F.3d at 616 (collecting cases). "[C]laims for breach of the collective bargaining agreement itself are automatically preempted." *Watson v. Prudential Ins. Co.*, No. 02-656, 2003 WL 715756, at *2 (E.D. La. Feb. 27, 2003). On the other hand, those claims "only tangentially involving provisions of collective-bargaining agreements are not preempted by [S]ection 301." *Thomas*, 39 F.3d at 617 (citing *Lingle v. Norge Div., Magic Chef, Inc.*, 486 U.S. 399, 406–07 (1988)). Breach of contract claims arising out the breach of other contracts between plaintiff and the employer, claims whose resolution do not involve an interpretation of the collective bargaining agreement, are not ordinarily subject to preemption. *See Parham v. Carrier Corp.*, 9 F.3d 383, 390 (5th Cir. 1993).

To determine whether Woodcock's state law contract claim is preempted by Section 301, the Court will need to consider the specific contract upon which Woodcock bases his claim. *See Branson v. Greyhound Lines, Inc., Amalgamated Council Ret. and Disability Plan*, 126 F.3d 747, 754 (5th Cir. 1997). In the Second Amended Complaint, Woodcock claims that Marathon "wrongfully discharged" him "[i]n violation of Article XVI, Section 4 of the [CBA]." Dkt. 17 at 2. *See also id.* at 7 ("A written and enforceable [CBA] existed between [Woodcock] and Defendants. . . . The Defendants promised employment under

5

these terms. The Defendants breached this agreement."). Article XVI of the CBA contains the grievance and arbitration provisions, and Section 4 specifically provides employees with the right to request a hearing with the Plant Manager in discharge and suspension cases. *See* Dkt. 18-2.

This is an easy case. Woodcock's breach of contract allegations necessarily require an interpretation of the CBA. Because a trier of fact would have to determine whether Marathon violated the CBA in order to find a breach of contract in this case, Woodcock's breach of contract claim is automatically preempted. *See Thomas*, 39 F.3d at 617–19 (holding that Section 301 preempted state law breach of contract claim involving breach of a collective bargaining agreement); *Parham*, 9 F.3d at 390 ("as [plaintiff's] claims are breach of CBA claims, preemption is automatic") (citation omitted).

**B.   FRAUD**

Marathon next contends that Woodcock's fraud claim is preempted by Section 301 because an "evaluation of the [fraud] claim is inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers Corp.*, 471 U.S. at 213. As discussed above, state tort law is preempted by Section 301 if it "purports to define the meaning of the contract relationship." *Id.* In other words, a tort claim brought under state law is preempted if the application of state law "requires the interpretation of a collective-bargaining agreement." *Lingle*, 486 U.S. at 413.

In this case, Woodcock's fraud claim is based on Marathon's promise in Article XIV of the CBA to "continue its policy of making every reasonable effort to protect the health of its employees, to provide safe working conditions, and to provide safe working

6

practices." Dkt. 17 at 5. Woodcock contends that this statement in the CBA is the "material misrepresentation [that] was false when it was made, false during and after Mr. Woodcock's employment." *Id.*

Marathon correctly observes that Woodcock's "fraud claim is substantially dependent on analysis of the CBA because [Woodcock] specifically invokes the CBA's health and safety provisions as the source of the alleged material misrepresentations and the right [Woodcock] seeks to vindicate." Dkt. 18 at 7. Even a cursory review of the Second Amended Complaint reveals that the CBA is the *only* source of the alleged misrepresentation to Woodcock.[2] Because proving the elements of fraud in this case unquestionably requires an interpretation of the CBA, Section 301 preempts Woodcock's fraud claim. *See, e.g., Smith v. Colgate-Palmolive Co.*, 943 F.2d 764, 767–71 (7th Cir. 1991) (holding that Section 301 preempted the fraud claim because an inquiry into reasonable reliance would involve construction of the collective bargaining agreement); *Smith v. Chrysler Corp.*, 938 F. Supp. 1406, 1418 (S.D. Ind. 1996) (holding that Section

---

[2] In response to Defendants' Motion to Dismiss, Woodcock argues, for the first time, that the alleged fraudulent representations at issue in this case "are not solely encompassed in the CBA." Dkt. 23 at 11. He vaguely suggests that there are alleged misrepresentations contained in mandated safety training as well as in instructions provided to employees related to the wearing of protective safety devices. Such allegations are notably absent from the Second Amended Complaint. In considering a Rule 12(b)(6) motion, a court should only consider those factual allegations contained in the live pleading. "New facts submitted in response to a motion to dismiss to defeat the motion are not incorporated into the original pleadings." *Coach, Inc. v. Angela's Boutique*, No. H-10-1108, 2011 WL 2446387, at *2 (S.D. Tex. June 15, 2011) (collecting authorities). Moreover, even if Woodcock had included such factual allegations in his Second Amended Complaint, they would fail to meet the heightened pleading standard for fraud claims required under Rule 9(b).

301 preempted fraud and misrepresentation claims because "[d]etermining whether the [plaintiffs] had the right to rely on the alleged misrepresentation depends on the meaning of the referenced language of the CBA").

To avoid dismissal, Woodcock argues that his fraud claims are not preempted by *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236 (1959). In *Garmon*, the United States Supreme Court held that states are forbidden from regulating activity that the National Labor Relations Act ("NLRA") "protects, prohibits, or arguably protects or prohibits." *Wis. Dep't of Indus., Labor & Human Relations v. Gould Inc.*, 475 U.S. 282, 286 (1986) (citing *Garmon*, 359 U.S. 236). The scope of *Garmon* is broad and "requires federal preemption of state causes of action 'if they attach liability to conduct that is arguably protected . . . or arguably prohibited' by [the NLRA]." *Kaufman v. Allied Pilots Ass'n*, 274 F.3d 197, 200–01 (5th Cir. 2001) (quoting *Mobile Mech. Contractors Ass'n, Inc. v. Carlough*, 664 F.2d 481, 487 (5th Cir. 1981)).

Woodcock's argument is completely off base. He confuses *Garmon* preemption with Section 301 preemption. These are two distinct preemption doctrines. *Garmon* preemption "forbids state and local regulation of activities that are protected by § 7 of the [NLRA], or constitute an unfair labor practice under § 8 [of the NLRA]."[3] *Bldg. & Constr.*

---

[3] Section 7 of the NLRA protects the right of employees to "assist labor organizations" and "to engage in other concerted activities." 29 U.S.C. § 157. Section 8 of the NLRA makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" in Section 7, and "to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subsection." *Id.* at §§ 158(a)(1), (4).

*Trades Council v. Assoc. Builders & Contractors of Mass.*, 507 U.S. 218, 224 (1993) (internal quotation marks and citation omitted).  Meanwhile, Section 301 of the LMRA "governs claims founded directly on rights created by collective bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987) (internal quotation marks and citations omitted).  Marathon's position is that Section 301 preemption bars Woodcock's claims because his breach of contract and fraud claims at issue in this case turn on the meaning of a collective bargaining agreement.   Marathon does *not* contend that Woodcock's fraud claims are preempted by the NLRA.  As such, the *Garmon* preemption doctrine has no application to the present case.  "The *Garmon* preemption doctrine is simply 'not relevant' where there is a claim under [S]ection 301 asserting a breach of the collective bargaining agreement." *Local Union No. 884 v. Bridgestone/Firestone, Inc.*, 61 F.3d 1347, 1356 (8th Cir. 1995) (quoting *William E. Arnold Co. v. Carpenters Dist. Council of Jacksonville*, 417 U.S. 12, 16 (1974)).  *See also Gerhardson v. Gopher News Co.*, 698 F.3d 1052, 1059 n.4 (8th Cir. 2012) ("Section 301 preemption is a distinct doctrine that is unrelated to *Garmon* preemption.") (citation omitted); *Londono v. ABM Janitorial Servs.*, No. 13-3539, 2014 WL 7146993, at *5 (D.N.J. Dec. 12, 2014) (the analysis utilized to determine whether Section 301 preemption applies is unrelated to the analysis of *Garmon* preemption under the NLRA).

## C.   SABINE PILOT

Lastly, Marathon requests that Woodcock's *Sabine Pilot* claim be dismissed under Rule 12(b)(6), arguing that Woodcock is not an at-will employee afforded protection by the *Sabine Pilot* exception.

"For well over a century, the general rule in [Texas], as in most American jurisdictions, has been that absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Cty. of Dallas v. Wiland*, 216 S.W.3d 344, 347 (Tex. 2007) (collecting cases). The Texas Supreme Court has, however, created a narrow public policy exception to the employment-at-will doctrine. *See Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985). *Sabine Pilot* grants a cause of action for at-will employees terminated solely because they refuse to perform an illegal act. *See id.* The Texas Supreme Court has repeatedly emphasized the narrowness of the *Sabine Pilot* exception to at-will employment. *See Safeshred, Inc. v. Martinez*, 365 S.W.3d 655, 659–60 (Tex. 2012).

There is no question in this case that Woodcock's employment was governed by a CBA, which provided that he could only be discharged for "just cause." Dkt. 18-2 at 6. This is important because the *Sabine Pilot* exception does not apply to employees who are parties to employment agreements that limit the right of an employer to terminate an employee for "cause." *See Simmons Airlines v. Lagrotte*, 50 S.W.3d 748, 752 (Tex. App.— Dallas 2001, pet. denied) (declining to extend the *Sabine Pilot* doctrine to contractual, "just cause" employees); *Salmon v. Miller*, 958 S.W.2d 424, 430 (Tex. App.—Texarkana 1997, pet. denied) (holding that the *Sabine Pilot* exception did not apply because the employee

was not an at-will employee). The *Simmons* court cogently explained the rationale for such

a holding:

> Although the *Sabine Pilot* exception may act as a deterrent to employers who
> would otherwise pressure employees to perform illegal acts or lose their jobs,
> the *Sabine Pilot* exception was created to benefit at-will employees who
> would have no recourse but to accept termination if they refused to perform
> an illegal act. That is not the case in a "just cause" employment relationship.
> In those circumstances, as is the case here, the employee has guaranteed
> contractual protections.

50 S.W.3d at 753. *See also Farran v. Canutillo Indep. School Dist.*, 420 S.W.3d 65, 78

(Tex. App.—El Paso 2012) ("The *Sabine Pilot* exception does not apply to [plaintiff]

because he is not an at-will employee, but he asks that we extend the exception to 'just

cause' employment relationships. . . . We decline to extend the *Sabine Pilot* exception to

[plaintiff's] 'just cause' employment relationship"), *rev'd on other grounds*, 409 S.W.3d

653 (Tex. 2013). "Extending the *Sabine Pilot* exception to 'just cause' employees is

unnecessary because express contractual limits on an employer's right to terminate protect

the 'just cause' employee's rights." *Simmons*, 50 S.W.3d at 753. "Whereas an at-will

employee has no recourse if he has been wrongfully terminated and does not fall under the

*Sabine Pilot* exception or one of the statutory exceptions, a 'just cause' employee has his

contractual remedies available, and may have additional statutory remedies available to

him as well." *Id.*

 In short, if the CBA is valid and enforceable, the *Sabine Pilot* doctrine has no

application in the instant case because Woodcock cannot be considered an at-will

employee.[4]  To avoid having the *Sabine Pilot* claim dismissed because he was not an at-will employee, Woodcock contends that the CBA is void as a result of Marathon's "material fraud." Dkt. 17 at 5.  If the CBA is void and of no effect, Woodcock takes the position that he should be considered an at-will employee because Marathon could terminate him at anytime without cause.  With respect to the allegations of fraud in connection with the CBA, Woodcock argues that Marathon "knew at the time" it negotiated the CBA that its "pressure holding devices, valves and gauges were not in compliance with environmental, health and safety guidelines, regulations and laws," but Marathon nevertheless promised to "continue its policy of making every reasonable effort to protect the health of its employees, to provide safe working conditions, and to provide safe working practices." *Id.* at 3.

As noted above, the *Garmon* preemption doctrine preempts states from regulating conduct that is arguably either protected or prohibited by federal labor relations law.  *See Garmon*, 359 U.S. at 245.  Woodcock's effort to have the Court conclude that fraud in the inducement renders the CBA a nullity fails because this Court lacks jurisdiction to determine whether the CBA was validly entered into or should be deemed void.  Section 8(d) of the NLRA obligates an employer to negotiate with employees "in good faith with

---

[4] In his response, Woodcock contends that "employment agreements that limit the employer's ability to discharge for just cause, but allow the employer to terminate the agreement at anytime with notice, create an at-will employment relationship." Dkt. 23 at 24.  This argument fails for two reasons.  First, Woodcock has not alleged that Marathon has the right to terminate the CBA anytime with notice.  Second, the Texas Supreme Court has expressly rejected Woodcock's position, holding that a CBA with a "just cause" termination provision modified an employee's at-will employment relationship, even if the CBA was terminable-at-will, so long as the CBA was not terminated during the employee's employment.  *See Sawyer v. E.I. du Pont de Nemours & Co.*, 430 S.W.3d 396, 402–03 (Tex. 2014).  That is exactly the scenario presented in this case.

respect to wages, hours, and other terms and conditions of employment, or the negotiation

of an agreement, or any question arising thereunder." 29 U.S.C. § 158(d).  Consequently,

state law claims that an employer made fraudulent statements in the course of collective

bargaining are preempted by the NLRA. *See Serrano v. Jones & Laughlin Steel Co.*, 790

F.2d 1279, 1286–87 (6th Cir. 1986) (allegedly fraudulent statements made in the course of

collective bargaining arise in the context of the duty to bargain in good faith found in

Section 8 of the NLRA).  That is the same argument Woodcock advances here to challenge

the validity of the CBA.

The opinion of the United States District Court for the Western District of Oklahoma

in *Richardson v. Watco Cos., Inc.*, No. CIV-10-0047-HE, 2011 WL 1500504 (W.D. Ok.

Apr. 19, 2011) is directly on point.    Just like Woodcock, the plaintiff in *Richardson*

claimed that he was not an at-will employee because "the CBA was induced by fraud and

was hence void and of no effect."  *Id.* at *2.  Rejecting this argument, the District Court

held that the complaint's allegations were preempted by *Garmon* because "[s]uch alleged

conduct is at the core of that which is regulated by" federal labor relations law.  *Id.*  The

same analysis applies to this case.  Woodcock's attack on the validity of the CBA—through

fraudulent inducement claims which implicate bad faith bargaining under the NLRA—falls

within the exclusive jurisdiction of federal labor relations law.  Such claims are preempted

under *Garmon*.

In arguing that dismissal of the *Sabine Pilot* claim is not appropriate at this time,

Woodcock claims that Marathon "contend[s] that the *Sabine Pilot* claim is preempted by §

301 of the LMRA." Dkt. 23 at 19.  Woodcock then cites several cases relating to Section

301 preemption, arguing that his challenge to the validity of the CBA is not preempted because his claims do not require interpretation of the CBA. Once again, Woodcock misunderstands Marathon's position, conflating Section 301 preemption and *Garmon* preemption. Importantly, Marathon does *not* contend that the *Sabine Pilot* claim is preempted by Section 301. Indeed, Section 301 preemption would not apply to the *Sabine Pilot* claim because no interpretation of the CBA is required to reach a determination as to whether fraudulent statements render the CBA void. Rather, Marathon argues that Woodcock's "*Sabine Pilot* claim is preempted under *Garmon* because he has alleged that the CBA is void as a result of [Marathon's] 'material fraud' to establish that he was an at-will employee as required to bring *Sabine Pilot* claim." Dkt. 25 at 6–7. The *Garmon* preemption argument goes unanswered by Woodcock. The Court, therefore, concludes that any claim under *Sabine Pilot* is preempted by federal law.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above, the Court RECOMMENDS that Defendants' Motion to Dismiss be GRANTED.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

14

SIGNED at Galveston, Texas, this 29th day of March, 2019.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE